STATE OF IOWA, Appellee, v. FLOYD FROAH, Appellant.

No. 43039.

NOVEMBER 19, 1935.

Ted Sloane and John L. Sloane, for appellant.

Edward L. O'Connor, Attorney General, Walter F. Maley, Assistant Attorney General, Carl A. Burkman, County Attorney, and Francis J. Kuble, Assistant County Attorney, for appellee.

PARSONS, J.—The defendant in this case was indicted by the grand jury of Polk county for burglary with aggravation, along with three others, and the cause was tried in the district court, submitted to the jury, and the jury returned a verdict of "Guilty". Whereupon the defendant was sentenced to be imprisoned for life in the penitentiary at Fort Madison, and the case comes up on his appeal.

The abstract is very short, comprising only, from cover to certificate, nineteen pages. The robbery occurred on November 10, 1934, and it was at the home of Mrs. Santo Cimino who lived at 110 Hartford avenue, Des Moines. The property taken in the burglary was a safe in the home, and there was deposited in the safe at that time $863 belonging to Mrs. Cimino, $1,400 that belonged to one Frank Folina, besides some bonds belonging to other parties. One Zugenbuhler, one of the accomplices, was called by the state as a witness, and objection was made to his testifying by reason of the fact that he was not one of the witnesses before the grand jury, and that his name was not indorsed as a witness on the indictment, he having been indicted in the same indictment as the appellant.

The county attorney made out for service a notice in compliance with section 13851 of the Code, and with the notice copies thereof for the defendant, and another party indicted with the defendant in the same indictment. Ted Sloane, the attorney who represents this defendant and who presents this case to this court, was at that time, and has been ever since, the attorney of record for the appealing defendant. No question is made about the sufficiency of the notice, except as to the service thereof. Within the proper time before the trial, and while the defendant was confined in the county jail, the notice was prepared by the county attorney for service on the defendant, it was accepted by Sloane, and he indorsed thereon in his own handwriting: "Due service and copy for each defendant of the above notice is hereby accepted Ted Sloan

Attorney for Floyd Froah and Buddy Cheutz.'' Cheutz and Froah were each named in the indictment as defendants, along with the witness Zugenbuhler. The court overruled the objection when so made, and in so doing said, ''In view of the acceptance of service, the court holds that the objections to the testimony of this witness is overruled, (defendant excepts) as well as section 13851, which seems to authorize under certain circumstances the service of notice upon the attorney. You may proceed.'' To which the defendant took exception. Zugenbuhler then testified as to the occurrence that took place; that he took the other defendants, including Froah, to the place of the burglary, and that Froah took part in the burglary; and that he himself got $460 out of it. Of course, this testimony by an accomplice was not of itself sufficient to corroborate, but Mrs. Cimino, whose house was robbed, and who was present at the time, testified to the presence of Froah, and to his taking part in and assisting in the robbery, and as to one of the robbers having and holding a gun and making threats; and as to the taking of the safe, the amount involved therein, and that it was about 7:30 or 8 o'clock p. m.

At the close of the state's evidence, the defendant by his attorney, the one accepting the service of the notice of Zugenbuhler's testimony, made a motion for a directed verdict on the following propositions: (1) No evidence to sustain necessary elements of the crime charged against the defendant; (2) no evidence to go to the jury connecting this defendant with the crime; (3) no evidence against the defendant except that of an accomplice, and that there is no corroboration of said accomplice as to any of his testimony tending to connect the defendant with the crime charged; (4) that if the jury should find the defendant guilty under the evidence before it, it would be the duty of the court to set the verdict aside. This motion was overruled, to which the defendant excepted. Whereupon the defendant put in his evidence which was mostly confined to proof of an alibi.

It appears that the defendant was employed in or about a beer tavern on Sixth avenue. Amongst the witnesses were persons temporarily residing (to put it lightly) at the county jail. One of them testified he had been convicted of a felony several times; another that he had been convicted of a felony once. At the close of this evidence the defendant then renewed his motion

for a directed verdict, which was overruled, and the jury on February 8, 1935, returned a verdict as follows: "We, the jury, find the defendant, Floyd Froah, guilty of the crime of burglary with aggravation, as charged in the indictment." The defendant filed motion for new trial, not set out in the abstract, which motion was on the 15th of February overruled, and the defendant was sentenced for life to the penitentiary at Fort Madison, Iowa. Sloane was at the time of the acceptance of service of notice, on January 13, 1935, and for some time had been, the attorney of record in this case for the defendant, and he has continued to be such ever since and is now prosecuting the appeal. He accepted service of the notice for defendant, with a copy to deliver to the defendant. All the statements about this are made by Sloane; no statement that he did not deliver it. We think it is presumed that he did his duty in this, delivered the notice to his client. We cannot hold otherwise than that this service, accepted as it was by the attorney for the defendant, with copies to be delivered to his client, met every purpose of the statute to bring notice home to the defendant of the intention to use the witness, and hence the district court did right in permitting the witness to testify. To hold otherwise would be to give opportunity to lawyers inclined to trickery in their dealings with the court to mislead officers deliberately with the intention of doing as was done in this case, objecting as objections were made here, and thus put off the evil days for their clients. We cannot sanction such a rule. There is no more excuse for an attorney to fail to perform his duty in a criminal case than in any other case. The ethics of the profession require that the lawyer dealing with the courts, and in dealing with the officers charged with the enforcement of the law, should be scrupulously careful to observe the ethics of the profession, as in other branches of the law. So this court cannot, and will not, subscribe to the theory that a lawyer defending one charged with a crime is permitted to mislead the courts and officers in the hope of getting an error in the record that he may reverse the court, possibly release some one who should not be free, and in any event prolong the litigation.

The provisions of section 13851 first appeared in the revision of the Code of 1860 as section 4786; then in the Code of 1873 as section 4421; and in the Code of 1897 as section 5373,

substantially as it now is, with the exception of the phrase ''or to his attorney of record if the defendant be not found within the county.''

We have no direct adjudication upon this question. It is discussed in State v. Mullenix, 212 Iowa 1043, 237 N. W. 483, to some extent. There four days' notice of the proposed testimony was properly given and a purported return of service was made and filed. The return, however, was defective. Proof that the service was in fact made was not disputed. Under such circumstances, the regularity of the proof of service was held not to be material.

In State v. Debner, 202 Iowa 150, 209 N. W. 404, the question arose whether a notice stating the state expected to use certain witnesses, and setting out the substance of what it was expected to show by them, had been served on one of the defendant's attorneys of record a sufficient length of time before the trial to comply with section 13851. The only objection to the form or substance of the notice is that it was addressed to the defendant by name, and to a firm of attorneys by name. The sheriff's return of service showed that it was served on another attorney representing the defendant, to which attorney it was not addressed, and that the defendant was not found in the county where the action was pending. The notice and return were held sufficient.

These authorities do not really touch the question here. So the question really raised here is, Where an attorney of record for a defendant indicted in a criminal case accepts service of the notice, and it is not merely served on him, and he makes the acceptance in the name of the client, is not the service sufficient? What is the object of this statute? It is simply to bring to the defendant notice that certain testimony will be offered. Here the attorney of record accepted the service for his client with a copy for his client; no showing that he did not deliver it to his client; the presumption being that he did communicate it to him. This court cannot go on record in saying that such service was not binding, and that thereby there was not a waiver of any of the possible right that the defendant himself had to have the officer serving the notice walk around to the jail, read it to defendant, and hand him a copy.

It will be observed that it was not served upon the attorney, but service was accepted by him for his clients. We think in

such a case the attorney has the authority to make the acceptance. The general rule is to that effect.

The Code, under subsection 2 of section 10922, speaking of the authority of an attorney, says he has the power to bind his client to any agreement in respect to any proceeding within the scope of his proper duties and powers; but no evidence of any such agreement is receivable, except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court. We think this subsection alone, in view of what took place at the trial, was ample authority for the authority to bind his client, and to waive the officer having the notice to serve walking around to the jail to give it to the client.

6 Corpus Juris, in section 143, beginning on page 637, says:

"His authority does not necessarily commence with the institution of a suit; where he is employed in anticipation of a suit he has as much power to bind his client before the suit is begun as he has afterward. The omissions, as well as commissions, of an attorney are to be regarded as the acts of the client whom he represents, and his neglect is equivalent to the neglect of the client himself."

The specifications of powers of an attorney contained in the Code do not exclude all other powers. Ohlquest v. Farwell & Co., 71 Iowa 231, 32 N. W. 277, 279, speaking of the powers of an attorney, says:

"But he is, by his general employment, authorized to do all acts necessary or incidental to the prosecution or defense which pertain to the remedy pursued. The choice of proceedings, the manner of trial, and the like, are all within the sphere of his general authority, and, as to these matters, his client is bound by his action." Rhutasel v. Rule, 97 Iowa 20, 65 N. W. 1013.

██ A motion has been filed in this case to tax attorney's fees. The present statute on the matter of fees for an attorney under appointment by the court to defend a pauper in a criminal case is section 13774, which fixes the attorney's fees on a per diem basis, and they must be allowed by the board of supervisors on a certificate of the trial court. Practically, this statute, with slight changes not necessary to be noted here, has been in effect

since the Code of 1851, while Iowa was a territory and up to the time that the Code took effect, and it merely provided for the appointment of an attorney to represent a pauper prisoner. Under this statute, the territorial Supreme Court, in Whicher v. Board of Commissioners, 1 G. Greene 217, held it was a matter of discretion on the part of the commissioners to allow compensation to an attorney defending a pauper prisoner, saying, ''There is no statute providing for compensation for services rendered in such cases,'' and held it was left to the discretion of the commissioners. This was by a divided court. In Hall v. Washington County, 2 G. Greene 473, decided in 1850, one Harriman had been convicted of murder, and a writ of error was sued out in his behalf. The Supreme Court gave him a certificate of his appointment for services. The county commissioners refused to allow the fee of $100 allowed by the court. It then went to the district court, which refused the attorney's fees, and an appeal was taken to the Supreme Court, which reversed the judgment and ordered a new trial, and expressly overruled the Whicher case. It really turned on the proposition that these services had been ordered by the court and that the legislature having fixed no fee, he would be allowed a reasonable fee.

Since the Code of 1851, the fee has been fixed in the statute. No authority is given for any other fees than that so fixed, and since that time this court has taken the position that such fees were confined to the amount set out in the statute. These views find support in Samuels v. Dubuque County, 13 Iowa 536; Baylies v. Polk County, 58 Iowa 357, 12 N. W. 311; State of Iowa v. Behrens, 109 Iowa 58, 79 N. W. 387; Cass County v. Page County, 203 Iowa 572, 213 N. W. 426.

So, in considering the whole case, for the reasons pointed out in this opinion, the motion to fix attorney's fees is overruled, and the judgment of the district court on the conviction of the defendant is affirmed.

ANDERSON, MITCHELL, DONEGAN, POWERS, and ALBERT, JJ., concur.